# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE APPLICATION OF THOMAS P. | : | Case No. 25-mc-138 |
| WINDOM FOR ORDER DETERMINING | : | |
| WHETHER CERTAIN INFORMATION | : | Chief Judge James E. Boasberg |
| IS PROTECTED FROM DISCLOSURE | : | |
| BY FEDERAL RULE OF CRIMINAL | : | **ORAL ARGUMENT REQUESTED** |
| PROCEDURE 6(e) | : | |
| | : | **UNDER SEAL** |

## REPLY IN SUPPORT OF APPLICATION OF THOMAS P. WINDOM FOR ORDER DETERMINING WHETHER CERTAIN INFORMATION IS PROTECTED FROM DISCLOSURE BY FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)

The Committee's arguments against Mr. Windom's application are the very definition of a strawman: the Committee devotes the majority of its Response to litigating self-serving issues that are irrelevant to the Court's determination, while deflecting attention from the core issue involving the scope of Rule 6(e).[1] Mr. Windom's application does not seek to quash the congressional subpoena, and he does not seek to enjoin the Committee from posing questions or otherwise invite the Court to tread on Legislative branch powers and procedures. Rather, the application asks the Court to do what only it can do, given that the Judiciary—not the Executive or Legislative branches—is assigned the obligation to resolve questions about the applicability of Rule 6(e) to inquiries to a former federal prosecutor about his prior involvement with grand jury investigations in this District. This is all spelled out in Mr. Windom's application, supporting memorandum, and proposed order. And yet, ignoring the actual relief sought by Mr. Windom, the Committee relies upon a single sentence pulled out of context from the introductory paragraph of Mr. Windom's supporting memorandum to inaccurately frame Mr. Windom's application as something it is not.

---

[1] Indeed, the Committee concedes that Mr. Windom must comply with Rule 6(e). *See* Response at 9, n.4.

RECEIVED

SEP 2 4 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Below, Mr. Windom addresses the Committee's jurisdictional arguments before briefly responding to the Committee's narrow reading of Rule 6(e).

## I.    Mr. Windom's Application Is Procedurally Sound

The Committee, distorting the factual record, claims that Mr. Windom's application is procedurally improper because it implicates "amorphous" categories of information that Mr. Windom and the Committee need further "opportunity to work through" together at his deposition. Response at 6.[2] But the information Mr. Windom addressed in his application and supporting memorandum ("Mem.") is hardly "amorphous." He provided the transcript of his June 12, 2025, voluntary interview documenting precisely how these issues arose during that proceeding. He cited the Committee's cover letter accompanying its subpoena, announcing its specific intention to revisit the same topics of "interactions with the FBI to obtain billing records from the Willard Hotel" and an alleged February 2021 investigative proposal by another Assistant United States Attorney. Mem at 7.[3] Mr. Windom simply seeks clarity from the Court as to whether Rule 6(e)

---

[2] The Committee also implies that because Mr. Windom is "neither" a defendant nor the government, he cannot properly file an application under Rule 6(e). Response at 6 n.2. In support of this argument, the Committee cites Rule 6(e)(3)(E)(ii) through (v). But those subsections apply to persons seeking to disclose Rule 6(e) material. Mr. Windom does not seek to disclose Rule 6(e) material; he seeks to avoid an unauthorized disclosure. Moreover, other petitioners seeking disclosure, such as the media, routinely move under Local Rules 6.1 and 57.6, as did Mr. Windom, with respect to Rule 6(e) and grand jury matters. *See, e.g.*, Memorandum Opinion, *In re Press Application for Access to Judicial Records Ancillary to Certain Grand Jury Proceedings Concerning Former Vice President Mike Pence*, No. 23-mc-35, ECF 10 (June 9, 2023 D.D.C.), available at https://www.courthousenews.com/wp-content/uploads/2024/11/2023-12-6-14-29-04-123mc35-2.pdf; *Press Application for Access to Judicial Records Ancillary to Certain Grand Jury Proceedings Concerning Former President Trump's Communications with His Attorneys*, No. 23-mc-65, ECF 1 (June 26, 2023 D.D.C.).

[3] Mr. Windom's supplemental memorandum pointed out the possibility that the Committee intends to ask questions on other topics that appear to implicate Rule 6(e). The Committee's response plays coy, neither confirming nor denying the possibility, claiming instead that "the specific contours of the Committee's deposition questioning are being shaped in real time" and that "these topics lack sufficient development and background and are in flux." Response at 9, 23 n.12. Accordingly, anything arguably "amorphous" about the Committee's inquiry should be attributed

limits his ability to provide answers on these topics prior to his deposition, similar to the
Department of Justice's request in *In re Capitol Breach Grand Jury Investigations within the Dist.
Of Columbia*, 339 F.R.D. 1, 9 n.7 (D.D.C. 2021) (Howell, C.J.) ("The government's decision to"
seek a court order determining whether information was protected by Rule 6(e) "shows
commendable and appropriate caution . . . particularly since violating Rule 6(e)(2)'s general rule
of grand jury secrecy carries potential penalties, including being held in contempt of court")
(internal quotations omitted).

The Committee states that if only it had the opportunity to pose its questions at the
deposition first, the Committee and Mr. Windom could "work through . . . those issues." Response
at 6. Setting aside an aspirational conception of what occurs during depositions, Mr. Windom and
the Committee have been in dialogue regarding Rule 6(e) and other issues for months. *See* Mem.
at 4-7 (describing the back-and-forth between Mr. Windom's counsel and Committee staff
beginning on April 24 and continuing through the receipt of the Committee's subpoena on July
21). The Committee advanced the same narrow interpretation of Rule 6(e) throughout, repeating
the assertion that the rule only applies to information Mr. Windom "learned from a grand jury."
*See* Mem. Ex G. (Tr.) at 20:11-20; Ex. H (July 21 Letter from J. Jordan to T. Windom at 3-4);
Response at 9 n.5. Rather than attempt to "work through" anything, the Committee has chosen to
simply compel Mr. Windom to appear before the Committee and pose to him the same questions

---

to the Committee, not Mr. Windom. Mr. Windom's counsel wrote to the Committee on August 5
seeking clarification and specificity regarding the Committee's proposed deposition topics, so that
the Court could address this issue. *See* Mem. at 8 (citing Ex. J, Letter from P. Burton to J. Jordan).
As the Committee never responded, Mr. Windom could only provide this Court with the
information about its intentions that the Committee provided him in its July 21 letter and the
Department's September 4 authorization letter. The Committee is free to provide this Court and
Mr. Windom additional specificity about the questions it intends to ask at Mr. Windom's
deposition if it wishes to do so.

again, ignoring his counsel's correspondence. It cannot now argue it is "improper" for Mr. Windom to seek relief from the Court—the very avenue the Department of Justice suggested in its most recent letter. *See* Supp., Ex. 1 at 3.

The sole legal authority the Committee cites in support of its claim of procedural impropriety, *Hutcheson v. United States*, 369 U.S. 599 (1962), is inapposite. Response at 6-7. The language quoted by the Committee from *Hutcheson* regarding the Committee's "right to ask" was made in the context of the witness petitioner's argument that the Committee's questions lacked a legitimate legislative purpose and were intended purely to "expose" the petitioner. 369 U.S. at 614-618. Mr. Windom has made no such argument. He merely has declined to answer questions out of concern that providing the answers could violate federal law. The Committee has not shown that Mr. Windom seeking relief from this Court is procedurally improper.

## II. Mr. Windom Has Article III Standing and His Application Is Ripe

In order to establish Article III standing, (1) a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is concrete and particularized, and 'actual or imminent, not conjectural or hypothetical'"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380, (2024) (same). "A claim is premature and therefore unripe for judicial review if it depends on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Parents v. Garland*, 88 F.4th 298, 307 (D.C. Cir. 2023) (quotations omitted). The Committee argues that Mr. Windom lacks Article III standing because "receiving a subpoena or being deposed" is not an injury and is not concrete, and any harm is speculative and "conjectural."

Response at 7-11. It further argues that Mr. Windom's application is not ripe because his theory of injury is "too speculative." *Id.* at 13. The Committee is wrong on both points.

First, the injury to Mr. Windom is concrete and specific. As outlined at length in his supporting memorandum, without a ruling from this Court on the scope of Rule 6(e) in this matter, Mr. Windom is at clear risk of being subjected to prosecution for either contempt of Congress or contempt of court. The Committee mischaracterizes the injury to Mr. Windom as "the mere act of receiving a subpoena or being deposed." Response at 8-9. It cites an inapposite, non-precedential case in which the Fifth Circuit held that it was not a sufficient explanation of alleged harm for plaintiffs to "suggest, without elaboration beyond a bare assertion, that [receiving] subpoenas violated their freedoms of speech, religion, association, and petition." *Id.* (citing *Williams v. Parker*, 843 F.3d 617, 623 (5th Cir. 2016)). Mr. Windom made no such argument here; rather, he clearly articulated the harm in being effectively forced to risk prosecution for contempt of court by violating Rule 6(e), or prosecution for contempt of Congress for refusing to answer the Committee's questions based on Rule 6(e). Mem. at 2, 9, 12.

Second, the Committee incants that the risk of injury to Mr. Windom is pure conjecture. *See, e.g.*, Response at 10 (stating that Mr. Windom being potentially held in contempt of Congress is "entirely hypothetical"). The Committee claims that in providing a ruling on Rule 6(e) this Court would have to "blindly speculate" about what the Committee could ask Mr. Windom. *Id.* Not so. Mr. Windom voluntarily testified for hours before the Committee, only declining to answer certain questions where he had a legal or ethical obligation to do so,[4] and the Committee then served him with a subpoena and accompanying letter (trumpeted to the public in a press release) that describes

---

[4] We are not asking the Court to resolve questions about the scope of authorization from the Department of Justice; indeed, we expect that the more recent authorization letter resolves most of those issues.

its intent to re-ask the same questions regarding the same topics—it requires no speculation to imagine what the Committee seeks to ask him about.

The Committee's faulty "conjecture" argument relies primarily on another inapposite, non-precedential case: *Bragg v. Jordan,* 669 F. Supp. 3d 257 (S.D.N.Y. 2023). *See* Response at 10. In *Bragg*, the moving party, New York Country District Attorney Alvin Bragg, sought a temporary restraining order to enjoin enforcement of a congressional subpoena served on the movant's former employee, Mark Pomerantz. Unlike Mr. Bragg, Mr. Windom does not request a temporary restraining order, or seek to enjoin or quash anything. And, also unlike *Bragg v. Jordan*, the Court here need not blindly speculate about the information sought by the Committee, as the Committee provided Mr. Windom a letter detailing its intended deposition topics, all of which are addressed in even greater detail in the interview transcript.[5]

Mr. Windom's case is far closer factually to *In re Grand Jury*, 510 F. Supp. 112 (D.D.C. 1981). As the Committee acknowledges, that case involved a response to a congressional request for Department of Justice records, the production of which the Department asserted violated Rule 6. Response at 14 n.10. Like Mr. Windom, the Department "filed a motion with this court seeking guidance on the applicability of Federal Rule of Criminal Procedure 6(e) to the … request." 510 F. Supp. at 114. The congressional request in that case consisted of a list of seven categories of documents. *Id.* at 115. Here, as in *In re Grand Jury*, the Committee has written Mr. Windom a letter describing its intended categories of questioning, and Mr. Windom has sought guidance from

---

[5] The Committee also relies on *Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013), for its argument that Mr. Windom lacks standing. Response at 11-13. In *Clapper*, however, the Court recognized that its standing caselaw does not require that the court be "*literally certain* that the harms [plaintiffs] identify will come about" and that courts sometimes find standing to sue where plaintiffs showed only a "'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." 568 U.S. at 414 n.5 (emphasis added).

the Court regarding those areas with respect to Rule 6(e) concerns. Mr. Windom's request thereby involves, in the words of the Committee, "a concrete and defined universe." Response at 14 n.10.

Far from being mere conjecture or a distant hypothetical, Mr. Windom has clearly and specifically articulated the harms he faces. There is "Door #1" (risking criminal prosecution for contempt of court) and "Door #2" (risking criminal prosecution for contempt of Congress). Mem. at 9. With respect to "Door #1," prosecution for contempt of court: apparently based solely on its narrow reading of Rule 6(e), the Committee "disputes that Door #1 imposes any meaningful risk for violating Rule 6(e)." Response at 9. But the Committee concedes that Mr. Windom "has a duty to comply with the legal obligations imposed by Rule 6(e)." *Id.* at 9 n.4. And the Department, for its part, has not taken a position on the application of Rule 6(e) in this matter. It has not to our knowledge filed any response to Mr. Windom's application. The Department has also refused in its September 4 letter to articulate its position beyond affirming that Mr. Windom is required to obey Rule 6(e), referring him to an inapplicable part of the Justice Manual, and stating that Mr. Windom should "ask the court" in the event he had any questions. *See* Supp. Mem. at 2, Ex. 1 at 3. Without a position from the Department, it is unclear what gives the Committee its great confidence that Mr. Windom is not at meaningful risk of being held in contempt of court.

To the contrary, the risks faced by Mr. Windom are more real today than when he was interviewed in June. President Trump himself highlighted the serious nature of this risk, four days ago directing the Attorney General in a social media post to immediately initiate criminal prosecution of his perceived political enemies. *See* https://truthsocial.com/@realDonaldTrump/posts/115239044548033727 ("[They] indicted me (5 times!), OVER NOTHING. JUSTICE MUST BE SERVED."). Moreover, at Mr. Windom's voluntary interview, Committee staff pointedly noted the existence of the Department's "Weaponization Working Group," which has the stated purpose of investigating the actions of the

Special Counsel and his team. *See* Mem. at 9 n.8. The head of the "Weaponization Working Group," Ed Martin, has stated that "he plans to use his authority to expose and discredit those he believes to be guilty, even if he cannot find sufficient evidence to prosecute." Glenn Thrush and Alan Feuer, *If Justice Dept. Can't Prosecute Trump's Foes, It Will 'Shame' Them, Official Says*, The New York Times, May 21, 2025 *available at* https://www.nytimes.com/2025/05/21/us/politics/trump-justice-department-ed-martin-weaponization.html ("'If they can be charged, we'll charge them,' Mr. Martin told reporters in May. 'But if they can't be charged, we will name them. And we will name them, and in a culture that respects shame, they should be people that are ashamed.'"). The risk of prosecution to Mr. Windom, who was unlawfully terminated because he "played a significant role in prosecuting President Trump" (Mem. at 3-4 and Ex. A), is far from speculative. Indeed, it strains credulity for the Committee to glibly dismiss the risk to Mr. Windom as not "meaningful." *Cf. Hedges v. Obama*, 724 F.3d 170, 196 (2d Cir. 2013) (noting that the Supreme Court has found standing to challenge criminal statutes pre-enforcement based on "fears of enforcement" as long as the fears are "not imaginary or wholly speculative.").

With respect to Door #2, contempt of Congress: again, the Committee downplays the risk to Mr. Windom. The Committee argues that because Mr. Windom "does not know which specific questions the Committee will ask him on September 30," his fear of contempt of Congress is "entirely hypothetical." Response at 10. But Mr. Windom knows the questions that were asked at his June 12 voluntary interview, and he has a letter from the Committee describing in detail the testimony it purports to seek. It is correct that Mr. Windom lacks confirmation from the Committee regarding the "specific questions" it intends to ask, as Committee staff has ignored a letter requesting such clarification, and the Committee's Response (authored by the House General Counsel instead of Committee staff) attempts to walk back what the Committee's letter to Mr.

Windom made clear. But the Court should not allow gamesmanship by the Committee to deprive Mr. Windom of constitutional standing to seek judicial relief. And the Committee's suggestion that Mr. Windom simply wait to be criminally charged and then raise his Rule 6(e) arguments as defenses are cold comfort. *Cf. Hedges*, 724 F.3d at 196 (plaintiffs seeking standing in pre-enforcement review cases "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief" and noting that courts have found standing where the plaintiff "will have to take significant and costly compliance measures or risk criminal prosecution"). Further, in evaluating whether material is protected by Rule 6(e), "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Lopez v. DOJ*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting *DOJ v. Reporters Committee for the Freedom of the Press*, 489 U.S. 749, 776 (1989)). Mr. Windom has standing to file this application due to the clear and concrete harms he would suffer from choosing either "Door #1" or "Door #2." While the Department of Justice, as far as we know, has declined the opportunity to file its own response here, the implication of its prior exhortation that Mr. Windom "ask the Court" (Supp. Ex. 1 at 3) is that it appears to agree that Mr. Windom has standing. Mr. Windom seeks a judicial ruling on whether Rule 6(e) governs specific, non-speculative topics of questioning identified by the Committee. And as described here and in his memorandum, it is not speculative for Mr. Windom to fear the harm of criminal prosecution for contempt of Congress or contempt of court if he is questioned without any such resolution. His application is therefore ripe.[6]

---

[6] If the Committee's position on standing and ripeness is correct, Mr. Windom apparently must wait until each specific question is asked at his deposition and only *then* seek guidance from the Court.

**III.    The Court Should Not Dismiss the Application on Grounds of Prudential Ripeness**

The Committee cites the "prudential ripeness" doctrine as an alternative basis for rejecting Mr. Windom's application. Response at 14-15. The Committee candidly (though parenthetically, *see* Response at 14) admits that the doctrine is typically only invoked in the special context in which a petitioner seeks judicial involvement in administrative agency proceedings—that is, in settings that could not be more different than the one presently before this Court. *See Lab. Council for Latin Am. Advancement v. U.S. Env't Prot. Agency*, 12 F.4th 234, 252 (2d Cir. 2021) (purpose of invoking the prudential ripeness doctrine is to avoid involving courts in "abstract disagreements over administrative policies") (quotations and citation omitted). That said, the Committee ignores other critical hurdles to prevailing on this theory. First, the application of this doctrine is a matter of judicial discretion, and not a question of the Court's jurisdiction. *See Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1165 (D.C. Cir. 2025) (Henderson, J., concurring) (noting that the Supreme Court has found that the doctrine of prudential ripeness is "inherently discretionary" and relies on "traditional equitable factors such as hardship to the parties"). And second, the doctrine itself has been called into question by the Supreme Court. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging") (quotations and citations omitted); *see also Indus. Energy Consumers*, 125 F.4th at 1163 (Henderson, J., concurring) ("Insofar as ripeness rests on prudential considerations, it infringes on our constitutional duty to adjudicate a proper case or controversy.").

Setting aside the doctrine's legal inapplicability, the Committee's claimed concern that a ruling in Mr. Windom's favor would portend an imminent flood of "requests for pre-deposition

advisory opinions" misses the mark. Response at 14-15. Mr. Windom's situation is an uncommon one in which he appeared for a voluntary congressional interview, declined to answer certain questions on legal grounds, and now is compelled to appear for a deposition where the Committee has publicly stated its intention to re-ask the same questions. In any event, should the Court determine that the prudential ripeness doctrine applies, we respectfully submit that equitable factors, such as the hardship described in his application and supporting memorandum, weigh in favor of the Court exercising its discretion.

**IV.    Mr. Windom's Application Is Not Barred by the Speech or Debate Clause**

Mr. Windom's application does not implicate the Speech or Debate Clause. He does not seek to quash the subpoena or restrict the Committee's ability to ask questions. The Committee relies on a single sentence in the introductory paragraph of Mr. Windom's supporting memorandum[7] to mischaracterize his application, incorrectly construing that sentence as an "admission" that Mr. Windom "challenges the Committee's subpoena authority," thereby running afoul of the Speech or Debate Clause. Response at 16. However, the Committee's focus on this introductory language ignores the more precisely articulated remainder of Mr. Windom's application and supporting memo, including its title (seeking an "order determining whether certain information is protected from disclosure by Federal Rule of Criminal Procedure 6(e)"); the sentence prior to the one the Committee highlights (seeking "an order determining whether certain information relating to grand jury investigations is within the scope of Federal Rule of Criminal Procedure 6(e)"); and its actual request for relief, *see* Mem. at 13 ("Mr. Windom respectfully requests that this Court issue an order determining whether the topics described in this

---

[7] *See* Mem. at 1 ("Mr. Windom files this application to resolve a dispute over whether a congressional committee may compel him to answer certain questions at deposition noticed for September 30, 2025.").

memorandum and the Committee's cover letter are within the scope of Rule 6(e)"); *see also* App. at 2, Mem. at 3 (same).

Continuing with the strawman diversion, the Committee cites a series of Speech or Debate Clause cases—but Mr. Windom does not deny that the Speech or Debate Clause provides Congress with certain immunities from suit. This is beside the point, as Mr. Windom has not asked this Court to interfere with congressional activity. Indeed, even as it strains to characterize his application as "an effort to evade" the Speech or Debate clause, the Committee recognizes this fundamental fact. *See* Response at 16 ("…Windom has not sued the Committee directly to obtain this relief…"). Contrary to the Committee's characterization, Mr. Windom merely seeks an order determining whether giving answers to questions about specific identified topics violates federal law. *See In re Grand Jury*, 510 F. Supp. at 115. And there can be no debate that the resolution of Rule 6(e) questions is assigned to the Judicial branch.

The Committee further asserts that the "Application has required the Committee to come to court to preserve its ability to conduct its upcoming deposition as it sees fit," and that it should therefore be seen as "the defendant in this matter." Response at 21-22. To the contrary, neither Mr. Windom nor the Court have required the Committee to do anything. Mr. Windom in good faith sought leave to serve the Committee with his application so that it was aware of a pending matter regarding his upcoming deposition, and so that the Committee could submit its view of Rule 6(e) to the Court if it wanted to do so. The Committee has now done so—and a lot more. That hardly makes it a "defendant." Far from attempting an "end run around the Speech or Debate Clause," Response at 5, Mr. Windom seeks to comply with it—by seeking a judicial determination regarding what Rule 6(e) permits him to say, not quashal of the subpoena or somehow interfering with legislative business.

## V.    The Committee's Interpretation of Rule 6(e) is Overly Narrow

After spending over 20 pages arguing that this Court should not address the substantive Rule 6(e) issues raised by Mr. Windom's application, the Committee finally turns to advancing its own view of the rule—the very purpose of providing it notice of the application. While Mr. Windom's interpretation is laid out in detail in his application, he responds briefly here to issues raised by the Committee's response.[8]

First, the Committee argues that subsequent case law has narrowed the law as articulated in *In re Motions of Dow Jones*, and now "warn[s] against a broad claim of secrecy." Response at 24. This is a vast overstatement. To support its position, the Committee relies most on *In re Sealed Case*, 192 F.3d 995, 1001-05 (D.C. Cir. 1999), a matter arising out of the Monica Lewinsky grand jury investigation, in which the D.C. Circuit rejected the argument that Office of Independent Counsel attorneys violated Rule 6(e) by telling a New York Times reporter that they "believe[d]" President Clinton should be indicted. The court found that these statements did not reveal matters occurring before a grand jury, but also cautioned that "Rule 6(e) would be easily evaded if a prosecutor could with impunity discuss with the press testimony about to be presented to a grand jury, so long as it had not yet occurred." *Id.* Contrary to the Committee's assertion, *In re Sealed Case* does *not* stand for a narrowing of *Dow Jones*, but merely confirms—and Mr. Windom agrees—that Rule 6(e) does not apply to "all matters occurring in the world that happen to be investigated by a grand jury." Here, questions regarding interactions with the FBI regarding grand jury subpoenas, and internal discussions regarding supposed investigative proposals relating to a

---

[8] As previously noted, *see* Mem. at 12 n.12, Mr. Windom is prepared to address the Court *ex parte* should it require more information to determine whether his answers to certain questions would implicate Rule 6(e).

grand jury investigation, are closely tied to "matters occurring before a grand jury"—and therefore fit squarely within the scope of the rule.

The Committee tries still other tacks to get the Court to narrow Rule 6(e). For example, the Committee tries to apply doctrines of statutory construction to the Department of Justice's two authorization letters regarding Mr. Windom's testimony, *see* Response at 28-29; however, as should be obvious and as the Department acknowledged in both letters, Mr. Windom cannot violate Rule 6(e). And the Committee attempts to sway the Court by arguing that ruling in Mr. Windom's favor would put other federal prosecutors at risk. Specifically, the Committee quotes the testimony of David Weiss regarding a separate investigation, and cites other testimony it claims to have obtained from four unnamed prosecutors, making bald allegations about the contents of non-publicly-available transcripts without describing them further. Response at 29-30. Respectfully, this has nothing to do with the Court's obligation to interpret the law and Mr. Windom's obligation to obey the law.

Finally, the Committee argues that two topics on which it seeks testimony are no longer protected by grand jury secrecy due to public reporting, relying heavily on a Washington Post article from June 2023. That article, citing unnamed sources, makes allegations regarding a supposed conversation between Mr. Windom and the FBI regarding grand jury subpoenas to the Willard Hotel, and regarding another prosecutor's "investigative proposal." But an exception to grand jury secrecy in instances where a newspaper merely publishes an article relating to an issue would reduce the rule itself to an exception. The Department would be forced to disclose vast amounts of secret grand jury information just because of something an unnamed source supposedly told a reporter. By analogy, under the Committee's view, if a national security reporter published an article on leaked classified information, that act of publication would result in the information's spontaneous declassification. The Committee's analysis is simply wrong.

Indeed, this Court and others in this District have rejected similar arguments made by the press seeking unsealing of grand jury matters. *See* Memorandum Opinion, *In re Press Application for Access to Judicial Records Ancillary to Certain Grand Jury Proceedings Concerning Former Vice President Mike Pence*, No. 23-mc-35, ECF 10 (June 9, 2023 D.D.C.) (unsealing grand jury matters that were revealed by "a grand-jury witness's [Vice President Pence] detailed description" of the proceedings, but keeping sealed "all other 6(e) material" despite public reporting on the topic); *see also In re N.Y. Times Co.*, 657 F. Supp. 3d 136, 156 (D.D.C. 2023) (vacated on other grounds) (rejecting press argument that Rule 6(e) materials should be unsealed where cited disclosures were "several news articles reporting on the requested materials that they believe exist and citing as their sources 'people familiar with' the matters."). The Committee's proposal that Rule 6(e) be limited simply to material "learned from a grand jury," Response at 9 n.5, is too narrow, for the reasons articulated by Mr. Windom in his memorandum.

## VI.    CONCLUSION

Mr. Windom's Application is not procedurally improper, and the clear risk of harm gives him standing to file this application. His application does not seek to order Congress to do anything, and so does not implicate the Speech or Debate Clause. This Court should reach the merits of Mr. Windom's Application. Mr. Windom respectfully requests that this Court issue an order determining whether the topics described in his memorandum and the Committee's cover letter are within the scope of Rule 6(e).

DATED:  September 24, 2025

Respectfully submitted,

*/s/ Preston Burton*
Preston Burton (D.C. Bar No. 426378)
Rachel Li Wai Suen (D.C. Bar No. 500527)
Jackson Hagen (D.C. Bar No. 1671315)
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Avenue, NW
Washington, DC  20037-3202
Telephone: +1 202 349 8065
Facsimile:  +1 202 339 8500
pburton@orrick.com
rliwaisuen@orrick.com
jhagen@orrick.com

*Counsel for Thomas P. Windom*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, I served a copy of the foregoing document on the Committee by electronic mail to the below counsel of record.

Matthew B. Berry
Todd B. Tatelman
Brooks M. Hanner
Andy Wang
Kenneth C. Daines
Office of General Counsel
U.S. House of Representatives
5140 O'Neill House Office Building
Washington, D.C. 20515
Matthew.Berry@mail.house.gov
Todd.Tatelman@mail.house.gov
Brooks.Hanner@mail.house.gov
Andy.Wang@mail.house.gov
Ken.Daines@mail.house.gov

/s/ Preston Burton
Preston Burton, Esq.